The Central Kansas Telephone Company, Inc. v. Commissioner.
Central Kansas Tel. Co. v. Commissioner
Docket No. 110281.
United States Tax Court
1943 Tax Ct. Memo LEXIS 375; 1 T.C.M. (CCH) 835; T.C.M. (RIA) 43151; March 31, 1943
*375 M. F. Cosgrove, Esq., 908 National Bank of Topeka Bldg., Topeka, Kans., for the petitioner. Arthur H. Fast, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This proceeding involves income and excess profits tax deficiencies as follows: Deficiency
Income
Excess Profits
Year
Tax
Tax
1938
$2,473.65
$21.07
1939
1,588.33
The question in issue is the basis to be used in computing depreciation deductions on certain assets which had been owned by a predecessor corporation. Petitioner contends that it acquired the assets in a statutory reorganization so that its basis is the same as that of its predecessor corporation. The parties have filed a written stipulation of facts which we adopt as our findings of fact. [The Facts] Petitioner is a Kansas corporation with its principal office at 501 Jackson Street, Topeka. It filed its returns for 1938 and 1939 with the collector of internal revenue for the Wichita division of Kansas. Petitioner operates a number of telephone exchanges which were formerly owned and operated by the Kansas Telephone Co., whose assets it acquired at a foreclosure sale in 1937. The Kansas Telephone Co. was organized *376 under the laws of the State of Kansas in 1928. It acquired at that time from different individuals and corporations a number of telephone exchanges and equipment for which it issued its one-year promissory notes due May 1, 1929, for $850,000. Prior to the due date of those notes it issued and sold to the public $550,000 or six percent gold bonds and $475,000 of new one-year promissory notes. The proceeds from the sale of those bonds and the new promissory notes were used to retire the first issue of promissory notes. Thereafter, it issued additional bonds in the amount of $70,500. The common stock of the company was all owned, except for qualifying shares, by Lawrence Regan & Co., investment bankers of Chicago, who furnished the funds for the purchase of the assets. The company being unable to meet its obligations on its last issue of promissory notes totaling $475,000 when they became due, Lawrence Regan & Co. sold all of its common stock to the Midwest States Utilities Co. which then exchanged its own securities for the past due notes of the Kansas Telephone Co. At the request of the bondholders of the Kansas Telephone Co. an audit of the company's books was made early in 1932 *377 which disclosed that it had current liabilities of approximately $40,000 and that its income was insufficient to meet its operating expenses. On February 27, 1932, the United States District Court for the District of Kansas, First Division, appointed receivers to take over the assets of the company. Thereafter, and pursuant to court order, all of the company's assets were sold at public auction on October 5, 1937, and were bid in by a bondholders' protective committee for $310,000. The total obligations of the company, including the principal and interest, amounted to $725,795.51. The bondholders' committee was formed September 15, 1932. It held 90 percent of the outstanding bonds of the company at the time of the foreclosure sale. The bondholders' committee submitted a "Plan of Reorganization" dated December 15, 1937, under which it was proposed that a new corporation, the petitioner herein, be formed to purchase all of the assets then held by the bondholders' committee. Pursuant to the plan of reorganization, which was approved by the court, petitioner was organized and all of its voting stock amounting to $450,000 was issued to the bondholders' committee in exchange for all of *378 the assets of the old company and the assumption of all of the obligations of the bondholders' committee. The owners of about 10 percent of the outstanding bonds declined to participate in the reorganization. These nonparticipating bondholders were paid off in cash at approximately fifty cents on the dollar. The total amount paid to them was $22,470.34. The funds required for that purpose were borrowed by petitioner and were later repaid by it. Under the plan of reorganization all of petitioner's voting stock was to be held by voting trustees until January 1, 1943. It was all delivered to the voting trustees when issued and was still held by them at the time of the hearing this proceeding. The parties have stipulated that the fair market value of the assets which petitioner acquired from the bondholders' committee at the time of their purchase was $450,000; that in the event the statutory reorganization questions presented herein are decided favorably to the respondent's contentions the proper basis for depreciation of petitioner's assets as of January 1, 1938, is $394,117.60; and that the same rates of depreciation shall be applied to the various assets comprising this total basis *379 as were used in the deficiency notice. It is further stipulated that in the event the statutory reorganization questions presented are decided favorably to the petitioner's contentions the proper basis for depreciation of petitioner's assets as of January 1, 1938, is $868,372.04; that the reserve for accrued depreciation thereon is $368,263.54; and that the unrecovered basis is $500,108.50. [Opinion] Our first question is whether under the facts stated above there was a statutory reorganization of the Kansas Telephone Co. within the meaning of section 112 (g) (1) of the Revenue Acts of 1934, 1936, and 1938, as amended by section 213 (g) of the Revenue Act of 1939. The pertinent part of section 213 (g) read as follows: (1) The term "reorganization" means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded; or *380 the acquisition by one corporation in exchange solely for all or a part of its voting stock of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation, * * * The reorganization question is controlled, we think, by the decision of the United States Supreme Court in . In that case, as in the instant case, a new corporation which was formed under a plan of reorganization acquired the assets of the old corporation from a bondholders' protective committee representing a majority of the bondholders of the old corporation. The minority bondholders who declined to participate in the reorganization were paid off in cash which was furnished by the new corporation. The court held that under section 112 (g) (1) of the 1934 Act the assets of the old corporation were not acquired solely for voting stock of the new corporation since some of the bondholders received cash for their interest in the assets. The court said in its opinion: Under the statute involved in , *381 there would have been a "reorganization" here. For the creditors of the old company had acquired substantially the entire proprietary interest of the old stockholders. See . But clause B of § 112 (g) (1) of the 1934 Act effects an important change as respects transactions whereby one corporation acquires substantially all of the assets of another. See S. Rep. No. 558, 73d Cong., 2d Sess., Committee Reports, Revenue Acts 1913-1938, pp. 598-599. The continuity of interest test is made much stricter. See Paul, Studies in Federal Taxation (3rd Series), pp. 36-41. Congress has provided that the assets of the transferor corporation must be acquired in exchange "solely" for "voting stock" of the transferee. "Solely" leaves no leeway. Voting stock plus some other consideration does not meet the statutory requirement. See Hendricks, Developments in the Taxation of Reorganizations, . Congress, however, in 1939 amended clause B of § 112 (g) (1) by adding, "but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation *382 of a liability of the other, or the fact that property acquired is subject to liability, shall be disregarded." 53 Stat. 871. That amendment was made to avoid the consequences of . See H. Rep. No. 855, 76th Cong., 1st Sess., pp. 18-20; S. Rep. No. 648, 76th Cong., 1st Sess., p. 3. And it was made retroactive so as to include the 1934 Act. 53 Stat. 872. But with that exception, the requirements of § 112(g) (1) (B) are not met if properties are acquired in exchange for a consideration other than, or in addition to voting stock. Under that test this transaction fails to qualify as a "reorganization" under class B. See also , and . In , , was held not applicable where the new corporation, in acquiring the assets of the old, assumed certain liabilities of the old corporation and expenses of the reorganization but paid no consideration *383 other than its voting shares of the assets. The stipulated facts here plainly show that petitioner paid $22,470.34 cash to the nonparticipating bondholders of the old company as part consideration for the assets. This was in no sense an obligation of the old company, as petitioner argues in its brief. The old company never undertook to redeem any of its bonds and it made no payments to the nonparticipating bondholders. On the facts here petitioner's reliance upon the Supreme Court's earlier decision in , and its efforts to distinguish this case from , must fail. The further argument is made by the petitioner that regardless of our determination on the reorganization question, section 112 (b) (5) entitled it to use the same basis for the assets as they had in the hands of its predecessor corporation. Petitioner cities , in support of this contention. Section 112 (b) (5) provides as follows: SEC. 112. RECOGNITION OF GAIN OR LOSS. *384 * * * * *
(b) Exchanges Solely in Kind. - * * * * *
(5) Transfer of Corporation Controlled by Transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. Section 113 (a) (8) provides that: SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of property. - The basis of property shall be the cost of such property; exempt that - * * * * *
(8) Property acquired by issuance of stock or as paid-in surplus. - If the property was acquired after December 31, 1920, by a corporation. (A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or *385 money, in addition to such stock or securities), or (B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. We have held above in deciding the reorganization question that the $22,470.34 which petitioner paid to the minority stockholders was paid as part consideration for the assets which it acquired from the bondholders' committee. To come within section 112 (b) (5) property must be transferred to a corporation solely in exchange for its stock or securities, and further, the stock or securities received by the transferors must be in proportion to their investments in the property. Treating all of the bondholders here, both participating and nonparticipating, as the "persons" who transferred the assets to petitioner, the transfer was not "solely in exchange for stock or securities" since some of the transferors, the nonparticipating bondholders, received cash only. On the other hand, if the participating bondholders, to *386 the exclusion of the nonparticipating bondholders, after the foreclosure sale, are regarded as the owners of the assets and as the persons who transferred them to petitioner, so that section 112 (b) (5) might be said to apply, then under section 113 (a) (8) the basis of the assets to petitioner would be the basis to the participating bondholders and not to the old corporations. The basis to the participating bondholders would be the price which they paid for the assets at the foreclosure sale. , involved facts materially different from those in the instant case. There the assets and bonds of the old corporations, which had filed petitions under section 77B of the Bankruptch Act, were transferred directly to a new corporation, without any intervening foreclosure sale, by the bondholders of the old corporations, who, by reason of the bankruptcy proceedings, had become the equitable owners of the assets, solely for stock and securities of the new corporation. Section 112 (b) (5) was held applicable, so that no gain or loss was recognizable on the transaction, although there was not a reorganization under section *387 112 (g) (1). The petitioner is not entitled under any applicable provisions of the act to use the basis in the hands of the old corporation for computing its depreciation deduction on the assets. Decision will be entered under Rule 50.